CRAGIN (NAZRO v.).    See Case No. 10,062.

---

## Case No. 3,320.

### CRAGIN v. THOMPSON.

[2 Dill. 513;[1] 12 N. B. R. 81.]

Circuit Court, D. Iowa. 1873.

BANKRUPT ACT—ASSIGNMENT UNDER STATE LAW—RIGHTS AND REMEDIES OF ASSIGNEE IN BANKRUPTCY—LIABILITY OF ASSIGNEE UNDER STATE LAW.

1. An assignment by a debtor, under a state law, of his property for the benefit of his creditors, is an act of bankruptcy.

2. Remedies of the assignee in bankruptcy to recover the property from the assignee under the state law, discussed.

[Cited in Re Pitts, 9 Fed. 544.]

3. Where the assignee, in an assignment made under the state law, qualified and became an officer of the state court, and received possession of the assigned property before the commencement of proceedings in bankruptcy against the debtor, and such state assignee, act-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ing in good faith, sold the assigned property un-
der the orders of the state court, and by its di-
rection paid over the proceeds to creditors who
proved up under the assignment, and this was
done before the assignee in bankruptcy brought
suit against him: *Held*, that he was not liable,
as in trover, for the value of the property re-
ceived under the deed of assignment.

[Cited in Wehl v. Wald, 3 Fed. 94.]

This is a writ of error to the district court
for the district of Iowa. The plaintiff is
the assignee in bankruptcy of the late firm
of S. & B. Stern, and the defendant was the
assignee in a deed of voluntary assignment
made by the said firm before they were pro-
ceeded against in bankruptcy. The present
action is in the nature of trover for the value
of the property assigned to the defendant.
In answer, the defendant denied all liability,
and set up as a special defence that before
the adjudication of bankruptcy the Messrs.
Stern made a general assignment of all their
property to the defendant for the benefit of
all of their creditors under the provisions of
the laws of Iowa; that the defendant ac-
cepted the trust in good faith, gave bond,
and qualified and became an officer of the
district court of the state for the county of
Dubuque and subject to its orders, and that
before this action was brought, the defendant,
by the order of said court, had fully admin-
istered all of said property and distributed
the proceeds among the creditors of the said
S. & B. Stern.

A jury was waived and the cause tried to
the court. The court below made a special
finding of facts and gave judgment for the
defendant [case not reported]. The facts
specially found are sufficiently referred to
in the opinion of the court. To reverse this
judgment, the assignee in bankruptcy brings
the case here by writ of error.

Shiras, Van Duzee & Henderson, for plain-
tiff in error.

Griffith & Knight, for defendant in error.

DILLON, Circuit Judge. As this case
comes here on a writ of error, only questions
of law can be reviewed. The sole question
of law presented by the record is, whether,
assuming the truth of the facts specially
found by the district court, the defendant
is personally liable to the assignee in bank-
ruptcy for the value of the property he re-
ceived from the Messrs. Stern. The ma-
terial facts are these: The assignment to
the defendant under the statute of Iowa,
and the defendant's qualification as such
assignee by filing in the state court the req-
uisite bond, and his possession of the as-
signed property under the deed of assignment,
all preceded the initiation of proceedings
against the assignors under the bankrupt
act. After the adjudication the assignee in
bankruptcy demanded of the defendant the
property, which he refused to surrender.
To compel such surrender summary proceed-
ings were instituted in the federal district
court, but were subsequently dismissed in

order that the present action might be
brought, which was commenced therein Feb-
ruary 24, 1872. Meanwhile, however, acting
under the orders of the state district court,
the defendant had sold the property assign-
ed to him, and had distributed the proceeds
under the orders of that court. This was
before the present action was brought. The
fact is expressly found that the defendant
acted in good faith, that he had no interest
in the assignment and derived no benefit
from it, and that he pursued the state law
and paid over the proceeds of all property
which came to his hands under the orders
of the state court to the creditors who proved
their debts under the assignment. Under
these circumstances the question for decision
is, whether the defendant is personally liable
to the assignee in bankruptcy for the value
of the property assigned to him, or its pro-
ceeds.

1. It has been decided in this circuit that
a voluntary assignment by a debtor, under
state laws, though free from fraud in fact
and embracing all of his property, and made
for the benefit of all of his creditors, is an
act of bankruptcy within the meaning of
the bankrupt law [of 1867 (14 Stat. 522)].
In re Burt [Case No. 2,210]; Hobson v. Mark-
son [Id. 6,555]. The assignee in bankruptcy
is entitled, as against the assignee under
the state law, to the possession and control
of the estate. So far there can be no doubt.

2. I am of opinion that while such an as-
signment is an act of bankruptcy, the as-
signment itself is not absolutely void ab
initio, but only subject to be avoided by pro-
ceedings taken under the bankrupt act. If
the assignors are adjudicated bankrupts,
the property assigned passes to, and be-
comes vested in, the assignee in bankruptcy,
and he is entitled to its possession so that
it may be used by him to pay the debts
which shall be proved against the estate in
the bankruptcy court. The proceedings un-
der the state law which contemplates that
creditors shall there prove their debts and
receive dividends are inconsistent with the
proceedings under the bankrupt act, which
requires all assets to be administered and all
debts established in the bankruptcy court.
There cannot be two concurrent administra-
tions of the same estate, and of course the
state enactment must give way in cases
where it is brought into collision with the
bankrupt act.

If the present action were against the
creditors who received dividends under the
assignment, there could, as it now seems to
me, be little or no doubt as to their liability.
But is the defendant liable, since he had no
property in his possession when this action
was brought, and had, before that time, paid
over in good faith all the proceeds of the
assigned property under the orders of the
state court? It is my judgment that the de-
fendant should not, under these circum-
stances, be held personally liable. It is not

necessary so to hold in order to prevent the bankrupt act from being evaded or its operation defeated. One plain remedy for the assignee in bankruptcy was to apply to the state court which, down to the adjudication of bankruptcy, at all events, if not afterwards, was rightfully exercising its jurisdiction over the assigned estate, and ask for an order upon the assignee under the state law, to surrender the estate to him. If improperly denied, the assignee in bankruptcy would have a remedy by appeal to the supreme court of the state, whose final judgment, if against him, would be subject to revision by the supreme court of the United States. I do not say, nor in this case is it necessary to affirm, that this would be the only remedy of the assignee in bankruptcy. If the property whose value is sought in this case were still in the hands of the defendant, it may be that he would be liable in respect to it if he should refuse to surrender it to the assignee in bankruptcy. This would depend upon the question, whether, after the adjudication of bankruptcy and the appointment of an assignee (thus superseding the rightfulness in law of any further administration under the state statute), the property assigned was in the custody of the law, i. e. of the state court and its officer, the assignee under the state law.

I have strong doubts, notwithstanding the argument of the district judge, whether property in the hands of an assignee under the state law is in custodia legis after the adjudication of bankruptcy, so as to exempt such assignee from liability to the assignee in bankruptcy or from proceedings in the federal courts to protect the rights of creditors under the bankrupt act. If the state assignee should surrender the property, he ought to be protected in so doing by the state court, but if it denied him such protection he could take the case, if necessary, to the supreme court of the United States. On the other hand, if the mere making of a voluntary assignment under the state laws withdraws the property and the assignee wholly from the operation of the bankrupt act and the machinery it has provided for the collection and distribution of assets under the supervision of the court it has established for that purpose, the bankrupt act would, to this important extent, seem easy of evasion. But I do not need to pursue the subject further or inquire what remedies the assignee in bankruptcy would have under other circumstances. What I hold is, that under the special findings of the district court—which not only exonerated the defendant from bad faith, but affirmatively found that he acted in good faith and under the orders of the state court, whose jurisdiction and right to act were in no way questioned therein by the assignee in bankruptcy—the defendant is not personally liable to the present plaintiff. He must now seek his remedy against those who have received

payments from the defendant in contravention of the bankrupt act. Affirmed.

NOTE [from original report]. See Marshal v. Knox (Sup. Ct. U. S. Dec. term, 1872) 16 Wall. [83 U. S. 551]; Johnson v. Bishop [Case No. 7,373]; Peck v. Jenness, 7 How. [48 U. S.] 612.